WRIGHT, Respondent, v. THOMAS & PROETZ COM-
MISSION COMPANY, Appellant.

St. Louis Court of Appeals, March 21, 1905.

BREACH OF CONTRACT: Evidence. In an action for damages
for breach of contract, the evidence is examined and held suf-
ficient to support the finding of the trial court for the plain-
tiff.

Appeal from St. Louis City Circuit Court.—*Hon. John
A. Blevins,* Judge.

AFFIRMED.

*Seneca N. & S. C. Taylor* for appellant.

*Charles B. Stark* for respondent.

GOODE, J.—This is an action for breach of con-
tract by the defendant, a corporation. The contract
provided in substance, that the plaintiff should cut and
put on sticks near the railroad siding at plaintiff's mill
at Wrightland, Arkansas, 200,000 feet of quarter-sawed
red oak lumber and hold the same on sticks at the siding
ninety days, the defendant agreeing to receive and accept
the lumber within four months from the time it was put
on sticks and pay plantiff for it. The breach alleged is
that plaintiff performed, or was ready and willing to
perform, all the conditions of the contract on his part
and so notified the defendant; but the defendant, in dis-
regard of its obligation under the contract, refused to
take the lumber which plaintiff had piled near the rail-
road siding, to his damage in the sum of $1510. The con-
tract reads as follows:

THOMAS & PROETZ LUMBER COMPANY
Rooms Nos. 402 and 403.
Benoist Bldg.
St. Louis, Mo., Nov. 24, 1899.
"Thomas & Proetz Com. Co., St. Louis, Mo.

"Gentlemen:—

"We hereby agree to cut the following lumber and put same on sticks at the railroad siding at our mill at Wrightland, Ark., and we agree to hold same on sticks until it is at last ninety-days in pile, you to pay for same less two (2) per cent off for cash after same has been on sticks ninety (90) days, inspection and measurement of the lumber to be made when the lumber is shipped.

"If however, you wish to hold same at the mill longer than ninety (90) days, you can pay for same, estimating the lumber in pile, with the privilege of keeping it on sticks two (2) months longer free from storage or charge of any kind, final settlement to be made as per final measurement and inspection, when the lumber is shipped out; said advance to be seventy-five per cent (75) of the value of the lumber on estimate and the balance of same, inside of five (5) months from the time it is put on sticks.

Fifty thousand feet (50,000) 1 C-2nd qr. red oak 6 in. wide and up;

Fifty thousand feet (50,000) 1 in. common qr. red oak 5 in. wide and up;

Twenty-five thousand feet (25,000) 1 1-4 C-2nd qr. red oak 6 in. wide and up;

Twenty-five thousand feet (25,000 ) 1 1-2 C-2nd qr. red oak 6 in. wide and up;

Twenty-five thousand feet (25,000), 1 1-4 Common qr. red oak 5 in. wide and up.

Twenty-five thousand feet (25,000), 1 1-2 common qr. red oak 5 in. wide and up; at thirty-three ($33) dollars per thousand feet for C-2nd and eighteen (18) dollars per thousand for common and nine ($9) dollars per thousand feet for good shipping cull, if there should be

any in the stock as piled, all f. o. b. cars Wrightland, Ark. Lumber to be cut full thickness, so that it will be full size when thoroughly dry. Lumber to be good for log run stock, good average widths, with no widths picked out. We hereby guarantee the freight rate not to exceed ten (10c.) per hundred pounds on the above lumber from Wrightland station to St. Louis, Mo.

"Deerfield Lumber Co.,

"Per S. H. WRIGHT, Prop.

"Accepted.

"Thomas & Proetz Commission Co.,

"Per C. E. THOMAS, Treas."

After that contract was executed, it was modified so as to provide that from and after June 1, 1900, plaintiff should cut no more lumber 1 1-4 to 1 1-2 inches thick, but after said date should cut all the lumber one inch thick, and otherwise carry out the contract as originally written.

Besides a counterclaim which need not be noticed, the defense is that the plaintiff failed to comply with his contract in this regard: that the plaintiff never, within a reasonable time (that is, within four months after November 24, 1899) cut at his mill and placed on sticks near the railroad siding at Wrightland, Arkansas, 200,000 feet of quarter-sawed red oak lumber as he had agreed; that defendant stood ready to carry out its part of the contract and urged plaintiff to performance; that on April 5, 1900, plaintiff represented to defendant that he had on sticks 50,000 feet of lumber and was adding from six to ten thousand feet a day and would probably have it all on sticks by May 1, 1900; that thereafter, on May 29, 1900, plaintiff informed defendant that he had 100,000 feet or more mostly one inch thick on sticks; that between June 1st and December 1st, 1900, plaintiff, on three occasions, stated that all the lumber called for by the contract had been cut and was on sticks at the siding, and on three occasions the defendant caused inspectors to be sent to Wrightland to examine and as-

certain whether the quanity of lumber called for by the contract had been cut and piled, and said inspectors, on each occasion, found that said representations were false.

It is the position of the defendant that the evidence shows beyond controversy that plaintiff could not comply with his contract to cut and pile the quantity of lumber agreed on, and that in lieu of doing the work at his own mill, he attempted to furnish the lumber called for by his contract by buying part of the lumber from other mills, which would have been no performance on his part. On the contrary, it is contended by the plaintiff that there was no difference in the cut of lumber at the different mills in that region; that the contract did not call for personal service on the part of the plaintiff, and he had a right to fill out the quantity of lumber he agreed to sell by purchasing lumber of like quality from other mills, and that whether this is true, or not, plaintiff actually cut the requisite quanity of lumber at his own mills and had it ready for delivery as the contract provided.

The case was tried without a jury; the court gave judgment for plaintiff and defendant appealed.

No point of law arises for decision on this appeal. The only question is whether there was evidence tending to prove plaintiff complied with his contract. This proposition was conceded by defendant's counsel at the trial. The defense was that plaintiff had not cut and piled the lumber as agreed. There was abundant testimony to be considered by the jury tending to prove compliance by plaintiff. Both he and his manager, Gearhart, swore to having more than two hundred thousand feet of quarter-sawed oak lumber of the kinds stipulated in the contract cut and on sticks by November, 1900. The defendant had given the plaintiff until that time to get out the lumber. Wright swore, furthermore, that one of his inspectors (Comer) and he estimated the lumber in piles on October 28th to be from 228,000 to 230,000 feet, of which all

but a small part had been on sticks more than sixty days. There can be no doubt that the tendency of the testimony of Wright and Gearhart was to prove full performance by Wright. It is said their testimony was untrustworthy. This, however, was a matter for the jury. Both of them had been in the lumber business long enough to qualify them to testify regarding the quantity and kinds of lumber on hand. At the trial the defendant sought to hold the plaintiff to a very rigid compliance with the contract, both in respect to the quantity of lumber piled and cutting it at the plaintiff's own mill. The defense was that the defendant was under no obligation to take any lumber until the whole 200,000 feet had been sawed at plaintiff's mill and put on sticks at the railroad siding. In the declarations of law given the court adopted this view and rejected the proposition that plaintiff had the right to supply any deficiency by purchasing the same quality of lumber from an adjacent mill.

The only point in issue here is one of fact, and as there was evidence to support the finding of the court below, we affirm the judgment.

All concur